# EXHIBIT A



Your Missouri Courts    ase.net

## 19JE-CC00803 - KIMBERLY ABRAM ET AL V TITLEMAX OF MISSOURI, INC. (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending  ○ Ascending

Display Options: All Entries ▼

---

**12/02/2019** ☐ **Affidavit Filed**
Return of Service for Defendant TitleMax of Missouri, Inc; Electronic Filing Certificate of Service.
  **Filed By:** JESSE B ROCHMAN
  **On Behalf Of:** KIMBERLY ABRAM, JOHN ADAMS, CAMILE ADKINS, KENDRA AKERS, MARIAN ALEXANDER, TRACY ALLEN, VARNICE ALLEN, MELVIN ALLMAN, STEPHANIE ALYADUMI, LEMONT AMOS

☐ **Summons Personally Served**
Document ID - 19-SMCC-1632; Served To - TITLEMAX OF MISSOURI, INC.; Server - ; Served Date - 27-NOV-19; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

**11/26/2019** ☐ **Entry of Appearance Filed**
Entry of Appearance; Electronic Filing Certificate of Service.
  **Filed By:** JESSE B ROCHMAN
  **On Behalf Of:** KIMBERLY ABRAM, JOHN ADAMS, CAMILE ADKINS, KENDRA AKERS, MARIAN ALEXANDER, TRACY ALLEN, VARNICE ALLEN, MELVIN ALLMAN, STEPHANIE ALYADUMI, LEMONT AMOS

☐ **Entry of Appearance Filed**
Entry of Appearance for Craig W Richards; Electronic Filing Certificate of Service.
  **Filed By:** CRAIG WAYNE RICHARDS
  **On Behalf Of:** KIMBERLY ABRAM, JOHN ADAMS, CAMILE ADKINS, KENDRA AKERS, MARIAN ALEXANDER, TRACY ALLEN, VARNICE ALLEN, MELVIN ALLMAN, STEPHANIE ALYADUMI, LEMONT AMOS

☐ **Summons Issued-Circuit**
Document ID: 19-SMCC-1632, for TITLEMAX OF MISSOURI, INC..

☐ **Entry of Appearance Filed**
Entry of Appearance for Martin L Daesch; Electronic Filing Certificate of Service.
  **Filed By:** MARTIN L DAESCH
  **On Behalf Of:** KIMBERLY ABRAM, JOHN ADAMS, CAMILE ADKINS, KENDRA AKERS, MARIAN ALEXANDER, TRACY ALLEN, VARNICE ALLEN, MELVIN ALLMAN, STEPHANIE ALYADUMI, LEMONT AMOS

**11/06/2019** ☐ **Filing Info Sheet eFiling**
  **Filed By:** JAMES G ONDER

☐ **Note to Clerk eFiling**
  **Filed By:** JAMES G ONDER

☐ **Motion Filed**

Case: 4:19-cv-03322-HEA   Doc. #: 1-1   Filed: 12/24/19   Page: 3 of 27 PageID #: 15

Motion for Appointment of Special Process Server. JOHN HOUSEMAN IS ON THE APPROVED LIST

**Filed By:** JAMES G ONDER

**On Behalf Of:** KIMBERLY ABRAM, JOHN ADAMS, CAMILE ADKINS, KENDRA AKERS, MARIAN ALEXANDER, TRACY ALLEN, VARNICE ALLEN, MELVIN ALLMAN, STEPHANIE ALYADUMI, LEMONT AMOS

☐ **Pet Filed in Circuit Ct**

Petition; Exhibit A; Exhibit B.

☐ **Judge Assigned**

---

Case.net Version 5.14.0.17     [Return to Top of Page](#)     Released 11/25/2019

**19JE-CC00803**

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, STATE OF MISSOURI

KIMBERLY ABRAM, *et al.,*

      Plaintiffs,

v.

TITLEMAX OF MISSOURI, INC.

      Defendant.

Case No.

**JURY TRIAL DEMANDED**

### MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

COMES NOW Plaintiffs, by and through their attorneys, James G. Onder and OnderLaw, LLC, and move this Court for an Order pursuant to Rule 54.01 appointing Captured Investigation Agency and their special process servers to include, but not limited to, John Houseman, as special process servers on Defendant TitleMax of Missouri, Inc., in the above-named cause of action. Plaintiffs state that the above-named process servers at Captured Investigation Agency and/or John Houseman are over the age of eighteen (18) years of age and are not a party in the above captioned matter. Plaintiffs request this Court issue Summons for service.

**ONDERLAW, LLC**

By:   */s/ James G. Onder*
        James G. Onder, #38049
        Martin L. Daesch, #40494
        Jesse B. Rochman, #60712
        Craig W. Richards, #67262
        110 E. Lockwood Ave.
        St. Louis, MO  63119
        (314) 963-9000 (telephone)
        (314) 963-1700 (facsimile)
        onder@onderlaw.com
        daesch@onderlaw.com
        rochman@onderlaw.com
        *Attorneys for Claimant*

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

## <u>Certificate of Service</u>

I do hereby certify that a true and correct copy of the foregoing document has been served by means of electronic filing to counsel of record this 6th day of November 2019.

<u>/s/ James G. Onder</u>

19JE-CC00803

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

| Name |
| --- |
| Abram, Kimberly |
| Adams, John |
| Adkins, Camille |
| Akers, Kendra |
| Alexander, Marian |
| Allen, Tracy |
| Allen, Varnice |
| Allman, Melvin |
| Alyadumi, Stephanie |
| Amos, Jr., Lemont |

19JE-CC00803

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

# EXHIBIT B

In the 1980's, title lenders began appearing across the nation in states where the industry was allowed.[3] In the past two decades those states with loose or nonexistent standards have seen a surge in title lending.[4]   In 2001, the Missouri State Auditor conducted a performance audit on the lending industry and at that time documented that there were 113 active title companies.[5] Currently, there are 297 active title lenders in Missouri.[6]

Title loans are short-term, high interest loans. Most loans have a 30 day term and are typically for small amounts (i.e. median minimum loan is $175 and median maximum loan is $2500).[7] These loans are most often made to people in desperate financial situations and are secured by the title to personal property, such as an automobile.[8] The lender imposes a lien on the vehicle and requires that the borrower to give the lender the original title and a copy of the key to the car.[9] While the borrower generally keeps the car

---

[3] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin*  9 (2005),
http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.

[4] *Id.* at 9

[5] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 8 (Mo. 2001).

[6] Missouri Division of Finance, Active Title Lender Licensee List, http://www.missouri-finance.org/upload/tl_list_906.pdf (Last Accessed October 18, 2006).

[7] Jean Ann Fox & Elizabeth Guy, Driven into Debt: CFA Car Title Loan Store and Online Survey 11 (2005),
http://www.consumerfed.org/pdfs/Car_Title_Loan_Report_111705.pdf.

[8] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 3 (Mo. 2001).

[9] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 4 (2005),
http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

during the loan, in the event of a default, the lender repossesses the car using the key provided by the borrower. [10]

Many times, if the borrower is unable to pay the loan in full on the maturation date, the lender will advise the borrower to "renew" the loan.[11] This renewal also incurs additional charges.[12] The Auditor's Report provides a real life example:

> A consumer obtained a title loan for $900 on July 7, 2000, renewed the loan 3 times paying $902 in interest and fees, but made no reductions in the principal amount. The consumer obtained this loan against her 1993 Buick Century. She was 67 years old, living on a fixed income, and as of October 2000, her loan was still open. She has already paid the equivalent of the loan value in fees, and still owes the $900. This practice will continue until the consumer starts paying on the principal. In this example, the consumer is 'hanging on' by paying fees but has still not been able to satisfy the loan.[13]

This example illustrates that individuals who cannot come up with the whole loan amount often pay, in interest and fees alone, far more than the original value of the loan because of the "renewal" process. In Missouri, "on average, title…lenders make 3.5 more renewal loans than new loans each month." [14]

Title loan borrowers are generally people on low or fixed incomes. The Missouri Auditor's report documented that 70% of title and payday loan consumers earned less than $25,000 per year.[15] For many people, their vehicle is their only meaningful asset; it is a necessary means for obtaining and maintaining employment. As one research study points out, "Lack of transportation is widely recognized as one of the significant barriers to obtaining and maintaining employment, and for many title loan borrowers, public

---

[10] *Id.* at 4
[11] *Id.* at 6
[12] *Id.* at 4
[13] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 4 (Mo. 2001).
[14] *Id.*
[15] *Id.* at  3

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

transportation is simply not available or not an acceptable substitute for a private vehicle." [16] Because title loans put borrowers in debt at high interest rates while placing their vehicle at risk, they have come under intense criticism throughout the nation.

For example, in Iowa, Governor Tom Vilsack has called for reforms and has characterized title loans as abusive lending. [17] The National Credit Union Administration has issued a formal declaration to federal credit union officials stating, "Title companies are urging financial institutions to participate in these ventures (title lending). The NCUA wants to caution credit unions that funding arrangements with title loan companies introduce several risks to the financial stability and reputation of the credit union." [18] Consumer groups have joined in the cry for reform. The Center for Responsible Lending has stated, "Title lenders . . . should not be permitted to operate in the dark and out of the public eye. State lawmakers, regulators and the public will benefit from closer scrutiny of the car title lending industry..." [19]

In response to the dangers posed by title loans, the Missouri legislature has attempted to afford protection to those borrowing from title lenders. [20] *Missouri Revised Statute* 367.518.1.4 requires that the monthly interest rate charged be disclosed on the loan agreement. *Missouri Revised Statute* §367.518.1.5 requires a statement providing the

---

[16] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 8 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.
[17] Car Title Loan Reform http://iowasenatedemocrats.org/Issues/cartitle/default.html (Last accessed October 18, 2006).
[18] National Credit Union Administration Letter http://www.in.gov/dfi/policies/CU/03-FCU-06.pdf (Last Accessed October 18, 2006).
[19] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 20 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.
[20] All statutes and interpretations referred to are reproduced in the section of this *Petition* entitled, "Referenced Statutes and Interpretations."

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

borrower the right to cancel the loan without any costs by the close of the next business day. *Missouri Revised Statute* §367.518.1.6 requires the disclosure of the hours and location where the titled personal property may be delivered. *Missouri Revised Statute* §367.512.4 requires that upon the third renewal of the loan and all subsequent renewals, the principal be reduced by 10% until the loan is paid in full. *Missouri Revised Statute* §367.525.1 requires title lenders to provide specific statutory notice to borrowers before entering into the contract. *Missouri Revised Statute* §367.525.4 requires title lenders to consider the financial ability of the borrower to reasonably repay the loan in the time and manner specified before making the loan. *Missouri Revised Statute* §367.527.1.3 prohibits a title lender from requiring a waiver of any right or protection of a borrower. *Missouri Revised Statute* §367.527.1.7 provides that a title lender shall not knowingly violate any sections under the Title Loan Section. *Missouri Revised Statute* §367.527.2 and §367.506.2  provides that if a title lender enters into a transaction in violation of the above statutes, then the lien and loan are void and that the borrower's only liability is for the principal.

**19JE-CC00803**

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY,
# STATE OF MISSOURI

KIMBERLY ABRAM, *et al.,*

      Plaintiffs,

v.

TITLEMAX OF MISSOURI, INC.
**Serve: C T CORPORATION SYSTEM**
**120 South Central Avenue**
**Clayton, MO 63105**,

      Defendant.

Case No.
Division

**JURY TRIAL DEMANDED**

## Petition

Plaintiffs sue Defendant TitleMax of Missouri, Inc. ("TitleMax"):

## Nature of Case

1.      This is a consumer claim against TitleMax regarding its title loan agreements with each plaintiff and disposition of each plaintiff's consumer property.

2.      TitleMax violated §§ 367.500 to 367.533 regarding its title loans with each plaintiff.

3.      TitleMax wrongfully accelerated the maturity of the unpaid balance under its title loan agreements with each plaintiff and otherwise wrongfully enforced its security interest under its title loan agreements with each plaintiff because TitleMax either failed to give each plaintiff right to cure notices required by § 408.554 or gave defective right to cure notices.

4.      TitleMax repossessed each plaintiffs motor vehicle.

5.      TitleMax failed to send each plaintiff a presale notice that complied with the Uniform Commercial Code ("UCC") adopted by Missouri.

6.      TitleMax failed to send each plaintiff a post-sale notice, which complied with the UCC.

1

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

7.      TitleMax breached its title loan agreements with each plaintiff.

## Parties

8.      Each plaintiff is identified on **Exhibit A**. Each plaintiff is a resident of Missouri.

9.      TitleMax is a Delaware corporation, headquartered at 15 Bull Street, Suite 200, Savannah, Georgia 31401, which does substantial business in Missouri. TitleMax of Missouri, Inc. does business as TitleMax and TitleBucks. TitleMax is not a resident of Missouri.

## Jurisdiction and Venue

10.     This is a civil case, so this Court has jurisdiction.

11.     Each plaintiff has a separate and distinct claim and has united for convenience and economy in a single suit.

12.     No plaintiff seeks more than $75,000, exclusive of interest and costs. The amount of damages claimed in this action by each plaintiff is and will forever be less than $75,000 exclusive of interest and costs. Each plaintiff agrees to the entry of an order placing an irrevocable cap on the amount of damages that may be awarded to each plaintiff, so that no plaintiff may recover more than $75,000, exclusive of interest and costs.

13.     Each plaintiff seeks $50,000.

14.     Venue is proper in this Court under § 508.010.2 because there is no count alleging a tort and TitleMax is a nonresident of Missouri.

## General Allegations

15.     Each plaintiff signed a title loan from TitleMax secured by his or her motor vehicle title.

16.     Each plaintiff's title loan agreement required him or her to deliver title of a motor vehicle to TitleMax and allow TitleMax to note its lien on the certificate of title.

17.     The title loan agreement signed by each plaintiff is a standardized form.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

18.     The title loan agreement signed by each plaintiff was for personal, family, or household purposes and the motor vehicle was used for personal, family, or household purposes.

19.     Each plaintiff's title loan agreement with TitleMax is a consumer-goods transaction as the term is defined under the UCC.

20.     TitleMax acted as a title lender without a title loan license for each plaintiff's title loan agreement.

21.     Each plaintiff's title loan agreement was secured by title to his or her motor vehicle.

22.     Sections 367.500 to 367.533 were enacted to protect consumer borrowers like each plaintiff.

23.     Each plaintiff's title loan agreement represents a transaction clearly within the spirit or reason of §§ 367.500 to 367.533, or within the evil which those statutes were designed to remedy.

24.     Each plaintiff's title loan agreement with TitleMax violated Missouri law for at least one or all the following reasons:

a.      As required by § 367.512.1(4), the title loan agreement failed to disclose TitleMax must renew the title loan agreement upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.      As required by § 367.518.1(2), the title loan agreement failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

c.      As required by § 367.518.1(4), the title loan agreement failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the title loan agreement failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from each plaintiff that resulted in the title loan agreement.

f.      As required by § 367.525.4, TitleMax failed to consider each plaintiff's financial ability to reasonably repay the title loans evidenced by the title loan agreement.

g.      As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000 to each plaintiff.

h.      As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for each plaintiff in the title loan agreement.

i.      As prohibited by § 408.553, the title loan agreement provided interest will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), TitleMax failed to reduce the principal of the loan by 10% upon the third and subsequent renewals of any plaintiffs.

k.      Otherwise failed to include all necessary and required disclosures in the title loan agreement signed by each plaintiff.

l.      Otherwise failed to provide all required notice to each plaintiff.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

m.      Collected interest, fees, and disposed of each plaintiff's motor vehicle on a void title loan agreement.

25.     TitleMax knowingly violated §§ 357.500 to 367.533 in violation of § 367.527.

26.     TitleMax violated §§ 357.500 to 367.533 when conducting transactions with each plaintiff, rendering the title loan agreement void under § 367.527.2.

27.     Each plaintiff is not bound by the title loan agreement.

28.     TitleMax's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of each plaintiff's consumer rights.

### Count I – Private Right of Action under Chapter 367

29.     Each plaintiff repeats the allegations set forth above as if set forth in Count I.

30.     Sections 367.500 to 367.533 protect consumer borrowers by requirement and proscription of certain conduct but provide no express civil remedy to persons injured by a title lenders failure to comply with sections 367.500 to 367.533.

31.     TitleMax violated §§ 367.500 to 367.533 when negotiating, offering, soliciting, or entering into the title loan agreement with each plaintiff.

32.     As a direct and proximate result of TitleMax's failure to comply with the requirements of §§ 367.500 to 367.533, each plaintiff suffered actual damages, including:

a.      Paying principal, fees and interest on loans issued without consideration for Each plaintiff's ability to repay the title loan.

b.      Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

c.      Violations of statutorily required notice and disclosure requirements in the title loan agreement.

d.      Paid fees and incurred costs besides the principal on the loan.

5

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

e.      Other uncertain and hard-to-quantify actual damages.

33.     Each plaintiff requests the Court enter judgment in his or her favor and against TitleMax as described in the "Prayer for Relief."

## Count II – Chapter 408 Violations

34.     Each plaintiff repeats the allegations set forth above as if set forth in Count II.

35.     Section 408.553 prohibits a lender from charging or collecting interest after default until after a final judgment is obtained.

36.     Contrary to § 408.553, each plaintiff's title loan agreement provides interest will continue to accrue on the title loan agreement after default even if no final judgment is obtained.

37.     TitleMax did not seek a deficiency judgment or other judgments against each plaintiff.

38.     TitleMax violated Chapter 408 for each plaintiff by collecting or charging interest that accrued after default but before any final judgment was obtained.

39.     Section 408.555 prohibits TitleMax from accelerating the maturity of the unpaid balance or otherwise enforcing its security interest until the notice required by § 408.554 is given.

40.     TitleMax failed to give each plaintiff the notice required by § 408.554 before it accelerated the maturity of the unpaid balance under each plaintiff's title loan agreement.

41.     TitleMax failed to give each plaintiff the notice required by § 408.554 before it sold the collateral secured by each plaintiff's title loan agreement.

42.     TitleMax violated Chapter 408 for each plaintiff by accelerating the maturity of the unpaid balance under each plaintiff's title loan agreement.

43.     TitleMax violated Chapter 408 for each plaintiff by selling the collateral secured by each plaintiff's title loan agreement.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

44.     TitleMax's violation of Chapter 408 for each plaintiff also violates §§ 367.512.1(6), (7) and 367.521 for each plaintiff, rendering each plaintiff's title loan agreement void under § 367.527.2.

45.     As a direct and proximate result of TitleMax's violations of Chapter 408 for each plaintiff, each plaintiff suffered, and continues to suffer, actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

       a.     Wrongfully collected amounts of interest.

       b.     The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on each plaintiff's title loan agreement.

       c.     Paying principal, fees and interest on loans issued without consideration for each plaintiff's ability to repay the title loan.

       d.     Paying excess interest and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

       e.     Violations of statutorily required notice and disclosure requirements in each plaintiff's title loan agreement.

       f.     Paid fees and incurred costs besides the principal on each plaintiff's loan.

       g.     Harm caused by defamation, slander and libel.

       h.     Harm caused by invasion of privacy.

       i.     Damage to credit.

       j.     Other uncertain and hard-to-quantify actual damages.

46.     Each plaintiff is entitled to attorney's fees under § 408.562.

47.     Each plaintiff is entitled to punitive damages under § 408.562.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

48.     Each plaintiff requests the Court enter judgment in his or her favor and against TitleMax as described in the "Prayer for Relief."

### Count III – UCC Violations

49.     Each plaintiff repeats the allegations set forth above as if set forth in Count III.

50.     TitleMax violated the UCC for each plaintiff by failing to send each plaintiff a presale notice in the form and manner required under the UCC before disposing of collateral secured by loans between TitleMax and each plaintiff.

51.     Alternatively, TitleMax violated the UCC for each plaintiff by sending presale notice to each plaintiff that included additional language or content not authorized or allowed by law, rendering the presale notice to each plaintiff misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

52.     As required under § 9-611 of the UCC, TitleMax failed to provide "reasonable authenticated notice of disposition" to each plaintiff.

53.     TitleMax violated § 9-615 of the UCC by applying the proceeds of sale of each plaintiff's collateral in the wrong order.

54.     TitleMax did not send post-sale notice, or any other explanation or writing, to each plaintiff providing all the information, in the requisite order, as required by § 9-616 of the UCC.

55.     If post-sale notice were sent, the post-sale notice sent to each plaintiff failed to comply with § 400.9-616 because.

56.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for each plaintiff.

57.     TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

58.    TitleMax's violation of Chapter 400 for each plaintiff also violates §§ 367.512.1(6), (7) and 367.521 for each plaintiff, rendering each plaintiff's title loan agreement void under § 367.527.2.

59.    As a direct and proximate result of TitleMax's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, each plaintiff suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

    a.    Harm caused by defamation, slander, and libel.

    b.    Harm caused by invasion of privacy.

    c.    Violations of statutorily required notice and disclosure requirements in each plaintiff's title loan agreement.

    d.    Other uncertain and hard-to-quantify actual damages.

60.    Each plaintiff requests the Court enter judgment in his or her favor and against TitleMax as described in the "Prayer for Relief."

## Count IV – Breach of Title Loan Agreement

61.    Each plaintiff repeats the allegations set forth above as if set forth in Count IV.

62.    Plaintiffs plead Count IV in the alternative to Count I for each plaintiff who is found to have a valid and enforceable title loan agreement.

63.    Each valid and enforceable title loan agreement required TitleMax to declare all amounts outstanding under each plaintiff's title loan agreement immediately due and payable before it repossessed and foreclosed on each plaintiff's vehicle.

64.    TitleMax breached each plaintiff's valid and enforceable title loan agreement because it repossessed the vehicles before declaring all amounts outstanding under the title loan agreement immediately due and payable.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

65.     TitleMax breached each plaintiff's valid and enforceable title loan agreement because it foreclosed upon the vehicles before declaring all amounts outstanding under the title loan agreement immediately due and payable.

66.     As a direct and proximate result of TitleMax's breach, each plaintiff suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

> a.      Harm caused by defamation, slander, and libel.

> b.      Harm caused by invasion of privacy.

> c.      Violations of statutorily required notice and disclosure requirements in each plaintiff's title loan agreement.

> d.      Other uncertain and hard-to-quantify actual damages, including loss of the vehicle (and all improvements made to the vehicle), cost of insurance premiums, expenses and labor by each plaintiff and others on their behalf directly related to coping with the repossession, the value of each plaintiff's efforts and others to cover for problems caused by the lack of a car, loss of use of the vehicle, inconvenience, aggravation, embarrassment, frustration, humiliation, and emotional distress.

67.     Each plaintiff requests the Court enter judgment in his or her favor and against TitleMax as described in the "Prayer for Relief."

## Count V – Breach of Arbitration Agreement

68.     Each plaintiff repeats the allegations set forth above as if set forth in Count V.

69.     Plaintiffs plead Count V for each plaintiff who TitleMax maintains is bound by a valid and enforceable arbitration agreement.

70.     For each valid and enforceable arbitration agreement, TitleMax agreed to pay all filing, hearing, and third-party arbitrator fees ("Arbitration Fees").

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

71.     Each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax demanded that TitleMax advance or pay the Arbitration Fees so each plaintiff could file an individual arbitration for covered disputes.

72.     Each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax is acting in good faith.

73.     Each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax cannot get a fee waiver.

74.     TitleMax refused to advance the Arbitration Fees for each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax.

75.     TitleMax refused to pay the Arbitration Fees for each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax.

76.     TitleMax is in default in proceeding with arbitration for each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax for its refusal and failure to pay the Arbitration Fees.

77.     TitleMax is in default in proceeding with arbitration for each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax because TitleMax failed to comply with the AAA's policies regarding consumer claims.

78.     Because the AAA declined to administer any arbitrations by TitleMax, each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax may submit his or her dispute to the appropriate court for resolution.

79.     TitleMax is in breach of contract for its refusal and failure to advance or pay the Arbitration Fees for each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax.

Electronically Filed - Jefferson - November 06, 2019 - 11:58 PM

80.     As a direct and proximate result of TitleMax's breach, each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax suffered actual damages not less than the Arbitration Fees.

81.     For each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax, Plaintiffs request TitleMax be ordered to pay all Arbitration Fees before or commensurate with compelling arbitration of any covered dispute.

82.     Each plaintiff requests the Court enter judgment in his or her favor and against TitleMax as described in the "Prayer for Relief."

**Prayer for Relief**

WHEREFORE, each plaintiff prays this Court enter a judgment for each plaintiff against TitleMax for $50,000.

**ONDERLAW, LLC**

By:     */s/ James G. Onder*
         James G. Onder, #38049
         Martin L. Daesch, #40494
         Jesse B. Rochman, #60712
         110 E. Lockwood Ave.
         St. Louis, MO  63119
         (314) 963-9000 (telephone)
         (314) 963-1700 (facsimile)
         onder@onderlaw.com
         daesch@onderlaw.com
         rochman@onderlaw.com
         *Attorneys for Plaintiffs*

**Certificate of Service**

I certify on November 6, 2019, the foregoing was electronically mailed to TitleMax's attorneys of record.

*/s/ James G. Onder*

12

Electronically Filed - Jefferson - November 26, 2019 - 10:14 AM

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY,
## STATE OF MISSOURI

KIMBERLY ABRAM, *et al.,*

      Plaintiffs,

v.

TITLEMAX OF MISSOURI, INC.

      Defendant.

Case No. 19JE-CC00803

**JURY TRIAL DEMANDED**

## ENTRY OF APPEARANCE

COME NOW Martin L. Daesch and The Onder Law Firm, hereby enter their appearance on behalf of Plaintiffs.

**ONDERLAW, LLC**

By:   */s/ Martin L. Daesch*
      James G. Onder, #38049
      Martin L. Daesch, #40494
      Jesse B. Rochman, #60712
      Craig W. Richards, #67262
      110 E. Lockwood Ave.
      St. Louis, MO  63119
      (314) 963-9000 (telephone)
      (314) 963-1700 (facsimile)
      onder@onderlaw.com
      daesch@onderlaw.com
      rochman@onderlaw.com
      *Attorneys for Plaintiffs*

## Certificate of Service

I do hereby certify that a true and correct copy of the foregoing document has been served by means of electronic filing to counsel of record this 26th day of November, 2019.

*/s/ Martin L. Daesch*

1

Electronically Filed - Jefferson - November 26, 2019 - 01:13 PM

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY,
## STATE OF MISSOURI

KIMBERLY ABRAM, *et al.,*

      Plaintiffs,

v.

TITLEMAX OF MISSOURI, INC.

      Defendant.

Case No. 19JE-CC00803

**JURY TRIAL DEMANDED**

## ENTRY OF APPEARANCE

    COME NOW Craig W. Richards and The Onder Law Firm, hereby enter their appearance on behalf of Plaintiffs.

                **ONDERLAW, LLC**

           By:  */s/ Craig W. Richards*
                 James G. Onder, #38049
                 Martin L. Daesch, #40494
                 Jesse B. Rochman, #60712
                 Craig W. Richards, #67262
                 110 E. Lockwood Ave.
                 St. Louis, MO  63119
                 (314) 963-9000 (telephone)
                 (314) 963-1700 (facsimile)
                 onder@onderlaw.com
                 daesch@onderlaw.com
                 rochman@onderlaw.com
                 *Attorneys for Plaintiffs*

## Certificate of Service

    I do hereby certify that a true and correct copy of the foregoing document has been served by means of electronic filing to counsel of record this 26th day of November, 2019.


                 */s/ Craig W. Richards*

1

Electronically Filed - Jefferson - November 26, 2019 - 01:14 PM

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, STATE OF MISSOURI

KIMBERLY ABRAM, *et al.,*

      Plaintiffs,

v.

TITLEMAX OF MISSOURI, INC.

      Defendant.

Case No. 19JE-CC00803

**JURY TRIAL DEMANDED**

## ENTRY OF APPEARANCE

COME NOW Jesse B. Rochman and The Onder Law Firm, hereby enter their appearance on behalf of Plaintiffs.

**ONDERLAW, LLC**

By:   /s/ Jesse B. Rochman
      James G. Onder, #38049
      Martin L. Daesch, #40494
      Jesse B. Rochman, #60712
      Craig W. Richards, #67262
      110 E. Lockwood Ave.
      St. Louis, MO  63119
      (314) 963-9000 (telephone)
      (314) 963-1700 (facsimile)
      onder@onderlaw.com
      daesch@onderlaw.com
      rochman@onderlaw.com
      *Attorneys for Plaintiffs*

## Certificate of Service

I do hereby certify that a true and correct copy of the foregoing document has been served by means of electronic filing to counsel of record this 26th day of November, 2019.

      /s/ Jesse B.Rochman

1



# IN THE 23RD JUDICIAL CIRCUIT, JEFFERSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DIANNA LYNN BARTELS | **Case Number:  19JE-CC00803** |
| Plaintiff/Petitioner:<br>KIMBERLY ABRAM | Plaintiff's/Petitioner's Attorney/Address<br>JAMES G ONDER<br>110 E. LOCKWOOD<br>2ND FLOOR |
| vs. | SAINT LOUIS, MO  63119 |
| Defendant/Respondent:<br> TITLEMAX OF MISSOURI, INC. | Court Address:<br>P O BOX 100 |
| Nature of Suit:<br>CC Breach of Contract | 300 MAIN ST<br>HILLSBORO, MO  63050 |
| | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:**  **TITLEMAX OF MISSOURI, INC.**
**Alias:**
**SERVE: C T CORPORATION SYSTEM**
**120 SOUTH CENTRAL AVENUE**
**CLAYTON, MO 63105**



**COURT SEAL OF**

**JEFFERSON COUNTY**

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

11/26/19    MICHAEL E. REUTER, CIRCUIT CLERK
/s/: T. PRINCE, DEPUTY CLERK

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                                    Signature of Sheriff or Server
                    **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
                                                          Date                                                     Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - Jefferson - December 02, 2019 - 02:57 PM

**IN THE 23RD JUDICAL CIRCUIT, JEFFERSON COUNTY MISSOURI**

| | |
|---|---|
| KIMBERLY ABRAM | Case No.:19JE-CC00803 |
| Plaintiff | |
| v. | |
| TITLEMAX OF MISSOURI, INC | |
| Defendant | |

## <u>AFFIDAVIT OF PERSONAL SERVICE</u>

That I, John G Houseman hereby solemnly affirm under penalties of perjury and upon personal knowledge that the contents of the following document are true and do affirm I am a competent person over 18 years of age, not a party to this action and that I am certified and in good standing and/or authorized to serve process in the Judicial Circuit in which the process was served.

That on 11/27/2019 at 2:47 PM at 120 S Central Ave Ste 400, Clayton, MO 63105-1705 I served TITLEMAX OF MISSOURI, INC C/O CT CORPORATION SYSTEM with the following list of documents: SUMMONSPETITION by then and there personally delivering a true and correct copy of the documents into the hands of and leaving with TITLEMAX OF MISSOURI, INC C/O CT CORPORATION SYSTEM.

That I asked the person spoken to whether the Servee was in the active duty military service of the United States or in the state in which this service was made and was told [ ] No they were not [ ] Yes they are [ ] No answer was given.

That the fee for this Service is  $ 50.00

John G Houseman
Contracted by Captured Investigative Agency
8235 Forsyth Blvd., STE 282
Clayton, MO 63105
(314) 392-3205

Executed On: 11/27/19



Order #:15312
le KIMBERLY ABRAM